UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| WYATT MORGAN | * | CIVIL ACTION NO.  12-0283 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| WARDEN, LOUISIANA STATE PENITENTIARY | * | MAG. JUDGE KAREN L. HAYES |

<u>REPORT AND RECOMMENDATION</u>

*Pro se* Petitioner Wyatt Morgan filed a petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on January 20, 2012.  [doc. # 1].   Respondent responded to the petition on June 5, 2012.  [doc. # 9].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction of three counts of Aggravated Rape.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

BACKGROUND

Petitioner was convicted of three counts of Aggravated Rape in violation of LSA R.S. 14:42 for the rape of victims "J.C.," "A.A.," and "R.H."  The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

**COUNT 1 - J.C.**

At the time of trial, J.C. was 82 years old and the only surviving victim. In the early morning hours of May 28, 1995, an intruder attacked her in her bedroom.  She woke to see a figure approaching her bed. He was holding a towel.

J.C. testified that she attempted to get away, but he caught her and began to strangle her. She fought back with her feet and legs in an attempt to get the intruder off of her.

1

The intruder ripped off her nightgown and eventually pinned her down. Throughout the attack, the intruder did not speak and J.C. never observed his physical features.

J.C. contacted the police, who immediately responded. As a result of the attack, J.C. sustained bruises on her face and throat and injuries to her arm and back. She testified that she also suffered a back injury that took her a while to recover from.

She was brought to Franklin Medical Center where she submitted to a sexual assault exam. This sexual assault kit was analyzed at the North Louisiana Crime Lab where spermatozoa were found to be present.

Deputy Tim Pylant, of the Franklin Parish Sheriff's Office, investigated the incident. A bed sheet and a towel were taken from the bedroom and placed into evidence. Deputy Pylant testified that J.C. appeared nervous, upset and scared, but that he did not recall any visible injuries on her body.

Shana Sutherlin, a registered nurse who was employed at Franklin Medical Center, assisted with the sexual assault exam of J.C. on May 28, 1995. Ms. Sutherlin testified that she observed J.C.'s face and neck were very red indicating trauma and that her left elbow was injured.

Mary Dukes, the quality manager and forensic DNA analyst at the North Louisiana Crime Lab, qualified as an expert in the field of forensic DNA testing. Analysis of the sex assault kit revealed the presence of spermatozoa. Regarding the evidence collected from J.C., Ms. Dukes testified the following:

> The DNA profile obtained from the sperm fraction of the vaginal swab . . . was consistent with being a mixture of DNA from at least two individuals, J.C. and Wyatt Morgan cannot be excluded as donors of the DNA in this mixture. The DNA profile obtained and from the sperm fraction of the vaginal swab was 5.45 trillion times more likely to be a mixture of DNA from J.C. and Wyatt Morgan than a mixture of DNA from J.C. and an unknown unrelated individual.

**COUNT 2 - A.A.**

At approximately 1:20 a.m. on September 24, 2000, A.A., an 89-year-old female, called the Franklin Parish Sheriff's Office to report that she was raped. At Franklin Medical Center, she submitted to a sexual assault exam. Although A.A. was deceased at the time of trial, the results of her sexual assault exam were admitted into evidence. Analysis of the sexual assault kit revealed the presence of spermatozoa.

Deputy Pylant also investigated the alleged rape of A.A. He spoke with A.A. at the hospital, and he testified that she appeared confused.

2

Debi Elrod, a registered nurse employed at Franklin Medical Center, assisted in the treatment and examination of A.A. Elrod was qualified to provide her expert opinion as a registered nurse. She testified that, in her professional opinion, the injuries A.A. sustained were consistent with a sexual  assault. Although a physician performed certain components of the physical exam, Elrod was present during the collection of the evidence, and thus was able to testify accordingly. In addition to the sexual assault kit, the nightgown A.A. was wearing during the assault was collected and properly placed into an evidence envelope then transferred to the police.

The state offered into evidence the medical records of A.A., which included the documentation of her arrival into the emergency room and her subsequent admittance into the hospital. The medical documentation indicated that there was vaginal penetration. The report also provided that ejaculation occurred.

Virginia Eldridge, a nurse employed at Franklin Medical Center, also assisted in the sexual assault exam of A.A. Eldridge was qualified as an expert RN and allowed to give her opinion based on her training and experience. Accordingly, Eldridge testified that she believed the injuries sustained by A.A. were caused by rape, i.e., actual penetration. Eldridge corroborated the testimony of Elrod and provided that all the proper procedures were followed.

Patrick Lane, an employee with the Louisiana State Police Crime Lab Physical Evidence Unit, qualified as an expert in the field of crime scene investigation. Lane responded to A.A.'s residence after the scene had been secured by the local police. He testified that the crime revealed in retrospect that "someone came there with a specific purpose and once they accomplished what that purpose was, they left."

Among the evidence collected from A.A.'s bedroom were the following items: a top sheet from her bed, the fitted sheet, two pillow cases, a reference blood sample, and a Band-Aid. Lane provided that the evidence was properly collected according to protocol and securely stored for further testing.

Julia Naylor,  an employee at the Louisiana State Police Crime Lab, was qualified as an expert in the field of forensic serology. Naylor received and analyzed the evidence collected by Lane, the nightgown worn by A.A. at the time of the assault, and the results of A.A.'s sexual assault kit. Naylor testified as to her findings:
Spermatozoa were detected on the vaginal smear and the vaginal washing smear from A.A's sexual assault kit. Semen was detected on the vaginal swab, the night gown and in the vaginal washings from A.A.'s sexual assault kit. Human blood was detected on the night gown from the victim's sexual assault kit and on the band-aid. Blood was detected on the vaginal swab and in the vaginal washings from the victim's sexual assault kit.

**COUNT 3 - R.H.**

3

On the morning of September 7, 2003, R.H., an 89-year-old female, telephoned her friend, Ms. Alice Carson, and told her that an intruder had entered her home that night and raped her. Ms. Carson came to the aid of R.H. and took her to Franklin Medical Center where she submitted to a sexual assault examination. Although R.H. was deceased at the time of trial, her statements to Ms. Carson and the results of her sexual assault exam were admitted into evidence. Analyzing the sexual assault kit revealed the presence of spermatozoa.

Deputy Pylant also investigated the alleged rape of R.H. He observed that there was no sign of forced entry at R.H.'s residence. Everything appeared to be in its place except for in the bedroom area. He testified that R.H. seemed upset and that he observed a bruise on her right forearm.

Alice Carson, a friend of R.H. for over 40 years who personally cared for her, testified that she received a phone call from R.H. who said, "Alice come help me, I think I've been raped." Ms. Carson and her husband immediately went to R.H.'s residence.

Ms. Carson testified that she observed scuff marks on R.H.'s elbow, a red mark on her back, and redness on her neck. She described R.H.'s demeanor as agitated, real nervous and shaky. According to Ms. Carson, R.H. waited before calling for fear that the intruder was still in her home. R.H. told Ms. Carson that the assailant woke her up and put his hand on her leg, at which point she began kicking to fight him off. He pulled R.H. onto the floor and that was how she got her bruises. Ms. Carson testified that the intruder choked R.H. until she was unconscious. Ms. Carson took R.H. to Franklin Medical Center to be examined.

Dr. Jorge Tapia, the attending emergency room physician at Franklin Medical Center, testified that R.H. reported to the emergency room for a sexual assault exam. Dr. Tapia observed the following injuries sustained by R.H.: semicircular lesions on the right forearm, a small lesion on the left inner thigh, significant edema, swelling, on the external aspect of the patient's genitalia, and a superficial laceration in the vaginal vault. He testified that his exam revealed that the patient had recently engaged in sexual intercourse, intercourse which was not consensual.

The state moved to introduce R.H.'s medical records into evidence. The judge conducted an in camera inspection of the records and only allowed information obtained from medical treatment to be presented to the jury.

Regarding the evidence collected from R.H., Ms. Dukes provided the following:

> The DNA profile obtained from the sperm fraction of the vaginal swab was consistent with being a mixture of DNA from at least two individuals, R.H. and Wyatt Morgan cannot be excluded as donors of the DNA in this mixture. The DNA profile obtained from the sperm

fraction of the vaginal swab was 3.47 trillion times more likely to be a mixture of DNA from R.H. and Wyatt Morgan than a mixture of DNA from R.H. and an unknown unrelated individual.

The DNA profile obtained from the sperm fraction of the vaginal pool was consistent with the DNA profile obtained from the reference sample of Wyatt Morgan. The probability of finding the same DNA profile if the DNA had come from a randomly selected individual other than Wyatt Morgan was approximately one in 1.67 trillion.

The DNA profile obtained from the sperm fraction of the vaginal washings was consistent with the DNA profile obtained from the reference sample of Wyatt Morgan. The probability of finding the same DNA profile if the DNA had come from a randomly selected individual other than Wyatt Morgan was approximately one in 9.87 quadrillion.

It was not until 2003 that the North Louisiana Crime Lab was able to connect these three rapes to one suspect. Nonetheless, the cases went unsolved for years until April 4, 2007, when Mary Dukes alerted the police that they had a CODIS 3  match of the DNA evidence submitted. This match was to Wyatt Morgan, the defendant in the instant case.

The defendant was arrested in 2007. He denied any involvement in the rapes and voluntarily consented to giving a DNA sample. Analysis of the sample matched the defendant as the one individual responsible for committing the rapes against J.C., A.A., and R.H. On May 31, 2007, the defendant was indicted for three counts in the aggravated rapes of J.C., A.A., and R.H.

On June 5, 2009, the jury returned guilty as charged verdicts on all three counts. The trial court denied the defendant's motions for new trial and for post- verdict judgment of acquittal. On July 7, 2009, the defendant received three life sentences, to run consecutively, all without benefit of probation, parole or suspension or sentence.

*State v. Morgan*, 34 So.3d 1127, 1130-35 (La. App. 2 Cir. 2010)(Internal citations and footnotes omitted).

Petitioner filed an appeal with the Second Circuit Court of Appeal where he presented all of the assignments of error at issue in the present *habeas* petition.  *Id*.  On April 20, 2011, the appellate court denied Petitioner's claim, finding that all of the alleged assignments of error were without merit.  *Id.*

5

Petitioner sought further review in the Louisiana Supreme Court. *See State v. Morgan*, 63So.3d 992 (La. 2011). On May 27, 2011, his writ application was denied without comment. *Id.* Thereafter, on September 12, 2011, Petitioner filed a Post Conviction Relief Application ("PCR"), alleging a constitutionally excessive sentence. (R. 822). His PCR was denied on September 14, 2011. (R. 831). Finally, on September 20, 2011, Petitioner appealed the denial of his PCR to the Second Circuit, which was denied on November 3, 2011. (R. 837).

In this suit, Petitioner contends: (1) there is insufficient evidence to prove his guilt on the three counts of Aggravated Rape beyond a reasonable doubt; (2) the trial court erred by denying his motion to suppress the introduction of DNA evidence in violation of the Fourth and Fourteenth amendments; (3) the trial court erred by allowing other crimes evidence to be admitted in violation of the Fourteenth amendment; (4) he was denied due process and a fair trial by the joinder of offenses at trial; and, (5) the trial court erred in allowing testimonial hearsay to be admitted in violation of the Sixth and Fourteenth amendments. [doc. # 1, P. 4-5].

The matter is now before the undersigned.

## LAW AND ANALYSIS

I.      **Standard of Review – 28 U.S.C. § 2254**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs *habeas corpus* relief. The AEDPA limits how a federal court may consider *habeas* claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, ––– U.S. –––, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

6

facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.    Petitioner's Claims

### a.    Claim One: Insufficiency of the Evidence

For Petitioner's first claim, he argues that the evidence was insufficient to prove the elements of the crime of Aggravated Rape beyond a reasonable doubt on each of the three counts. In support of this claim, Petitioner argues (1) the Prosecution failed to establish that J.C. was actually penetrated; (2) because A.A. and R.H. were deceased at the time of trial, the Prosecution had to rely on insufficient circumstantial evidence, much of which is inadmissible hearsay; (3) the Prosecution failed to establish that A.A. and R.H. were over the age of 65; and (4) the Prosecution produced no evidence to prove that the sexual intercourse with A.A. and R.H. was

7

non-consensual.  [doc. # 1-2, P. 7-11].

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal *habeas* court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002).  A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court invoked and applied the *Jackson* standard.  *Morgan*, 34 So.3d at 1134-35.  The court then referenced the definitions relevant to the crime of Aggravated Rape under Louisiana law.  *Id.* at 1134.  La. R.S. 14:41 provides, in pertinent part:

> Rape is the act of anal, oral or vaginal sexual intercourse with a male or female person committed without the person's lawful consent. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete this crime.

La. Rev. Stat. Ann. § 14:41 (2012).  La. R.S. 14:42 provides, in pertinent part: "aggravated rape is a rape committed  upon a person sixty-five years of age or older." *Id.* § 14:42.

Under La. R.S. 14:41 and 14:42, the state had to prove that each victim was 65 years of age or older and that the defendant committed an act of sexual intercourse without her consent.

"Violation of La. R.S. 14:41 occurs when there is any penetration, however slight, of the aperture of the female genitalia, even its external features."  *State v. Bertrand*, 461 So. 2d 1159 (La. App. 3d Cir. 1984).  Ultimately, the Louisiana appeals court, applying the *Jackson* standard, found "the state proved each element of aggravated rape and that the defendant was the perpetrator of each count of aggravated rape."  *Morgan*, 34 So.3d at 1136.  A review of the state court record shows that the state court's findings were entirely reasonable; *a fortiori*, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable; therefore, Petitioner's claim for relief based on insufficiency of the evidence should be **DENIED.**

> **b.     Claim Two: Motion to Suppress the DNA Evidence**

Next, Petitioner argues that the trial court erred by denying his Motion to Suppress the DNA evidence.  Specifically, he alleges that the search warrant "did not comply with the oath or affirmation requirements."  [doc. # 1-2, P. 13].

 As Respondent properly points out, a suppression hearing was hel d before the state trial court on April 14, 2009, on the exact issue presented before the undersigned today.  (R. 157-65). At the hearing, Franklin Parish Deputy Mike Gilmore testified that he and Deputy Tim Pylant met with Petitioner and received his voluntary consent to collect a DNA sample.  (R. 157-60). The trial court accepted the uncontroverted testimony of Deputy Gilmore and determined that consent was voluntary.  (R. 165-66).  Additionally, the trial court found that Petitioner gave consent "without the Court order being used and even if the Court order had been used and it had been found that it was invalid . . . [the Petitioner's DNA] matched so inevitably they would have found this information later . . . [.]"  (R. 166).

The Supreme Court held in *Stone v. Powell*, that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). This is the case here; accordingly, Petitioner's claim for relief on the basis that his motion to suppress should have been granted by the state court should be **DENIED**.

    **c.**    **Claim Three: Other Crimes Evidence**

Petitioner alleges that the "trial court erroneously allowed" the introduction of his prior Peeping Tom conviction. [doc. # 1-2, P. 18]. Specifically, Petitioner argues that the introduction of his prior conviction amounts to improper character evidence, as "the prosecution failed to show any probative value with respect to this evidence" and it unduly affected the jury's verdict. *Id*. at 19.

Under Louisiana law, evidence pertaining to a defendant's commission of crimes, wrongs or acts, other than the one with which he is currently charged, is inadmissible, when the only purpose of such evidence is to prove the defendant's character and thus his subsequent disposition to break the law. La. C.E. art. 404; *State v. Harrison*, 604 So. 2d 583 (La. 1992). The underlying rationale is that the finder of fact is likely to convict because the defendant is a "bad person" regardless of the strength of evidence against him in the case being tried. *State v. Gay*, 616 So. 2d 1290 (La. App. 2d Cir. 1993).

However, there are some exceptions to this general rule listed in La. C.E. art. 404, which provides, in pertinent part, that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.

La. C.E. Art. 404. There are other jurisprudential factors to be considered in determining

whether evidence of other acts may be admitted.  First, one of the exceptions listed in Article 404 must have some independent relevance, or be an element of the crime charged; in addition, such factor must be a genuinely contested issue at trial.  *State v. Welch*, 615 So. 2d 300 (La. 1993); *State v. Jackson*, 625 So. 2d 146 (La. 1993).  Second, the Prosecution must make a showing of fact which would support a jury finding that the defendant committed the prior act by a preponderance of the evidence.  La. C.E. art. 1104; *State v. Langley*, 680 So. 2d 717 (La. App. 4th Cir. 1996); *State v. Crawford*, 672 So. 2d 197 (La. App. 3d Cir. 1996).  Third, even if independently relevant, the evidence may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.

Lastly, the requirements set out in *State v. Prieur*, 277 So. 2d 126 (La. 1973) must be met. Under *Prieur*, in order to comply with due process, the Prosecution is required to: (1) give pretrial notice of its intent to use evidence of other crimes and (2) prior to admission of the evidence, show that the evidence is not repetitive or cumulative, serves the purpose for which it is offered, and is not pretext for portrayal of the defendant as a person of bad character.  *Prieur*, 277 So.2d at 135.  Additionally, *Prieur* requires that, upon request of the defendant, the jury be charged that the evidence was received for the limited purpose of proving an issue for which other crimes evidence may be admitted, such as intent, and that the defendant cannot be convicted of any charge other than the one named in the indictment or one that is responsive to that charge.  *Id.*

In this case, the Prosecution complied with the pretrial notice requirement by providing Petitioner with notice of its intent to introduce evidence that Wyatt Morgan was the same person convicted of the offenses of Peeping Tom and Trespassing in Franklin Parish.  (R. 89).   The Prosecution introduced Petitioner's prior convictions and the testimony of Deputy John

McCarthy.  Based on this evidence, the Prosecution established that on July 29, 2001, Petitioner was observed approximately 15 feet away from and looking into the windows of Mrs. McLemore, an elderly lady, late at night.  (R. 643).  The Deputy testified that Petitioner was on his bike and had a "big terry cloth" in his possession.  (R. 650).  Following his arrest, Petitioner was charged with and pled guilty to simple criminal Trespass and Peeping Tom.  (R. 648).  It was later shown that Mrs. McLemore lived in the same area as the other victims.  Finally, the jury was properly charged by the trial court that the evidence of Petitioner's prior conviction "is to be considered . . . for  limited purpose, the sole purpose for which such evidence may be considered is whether it tends to show the defendant's identity, intent, plan, system, and guilty knowledge to commit the present offense . . . [.]"  (R. 645).

A consideration of the jurisprudential factors establishes that the trial court properly admitted the Petitioner's prior convictions.  First, the *modus operandi* is so similar that one can come to the conclusion that the same person was the perpetrator in all four instances.  The victims of the three counts of Aggravate Rape were alone in their houses at night just as Mrs. McLemore was.  Mrs. McLemore's residence was located in the same areas as the three victims. Petitioner was found with a "big terry cloth," which was also used in the rape of J.C. Furthermore, the Peeping Tom and Trespassing conviction is relevant to prove material facts in the instant case.  Specifically, it showed how he selected his victims, how he confirmed that the victims were alone, and how he generally prepared for the commission of these crimes.  Second, the state proved by a preponderance of the evidence that the Petitioner committed the Peeping Tom and Trespass – the Petitioner actually pled guilty to the charges.  Additionally, the Petitioner has never contested the prior conviction.

Third, the probative value of the evidence of the prior convictions substantially outweighs the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, or waste of time.  *See* La. C.E. art. 403.  In *State v. Humphrey*, the Louisiana Supreme Court stated that the underlying policy is not to prevent prejudice, since evidence of other crimes is always prejudicial, but to protect against unfair prejudice when the evidence is only marginally relevant to the determination of guilt of the charged crime.  412 So. 2d 507, 520 (La. 1981).  Here, the other crimes evidence is not "marginally relevant," but instead provides proof that the *modus operandi* in all four instances is so similar that it is more likely than not the work of one individual.  Accordingly, Petitioner's claim for relief on this basis should also be **DENIED**.

### d.      Claim Four: Severance of Offenses

Petitioner next argues that the three charges of Aggravated Rape "should have been severed in the instant case as to avoid confusion by the jury with regards to the DNA evidence presented." [doc. # 1-2, P. 21].

La.C.Cr.P. art. 493, 493.2 provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, provided that the offenses joined must be triable by the same mode of trial.

> *                             *                             *

> Notwithstanding the provisions of Article 493, offenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Cases so joined shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict.

Louisiana jurisprudence supports the joinder for trial of separate charges for the rape of separate victims.  *See State v. Washington*, 828 So.2d 97 (La. App. 2d Cir. 2002); *State v. Harris*, 765 So.

13

2d 1230 (La. App. 2d Cir. 2000).  In *Harris*, the evidence demonstrated the similarity of the

common scheme of the crimes and at trial, the evidence was presented chronologically and

evidence as to each crime was presented separately.  In affirming defendant's convictions, the

*Harris* court noted that a motion to sever separate counts:

> is addressed to the sound discretion of the trial court and the court's ruling should not
> be disturbed on appeal absent a showing of abuse of discretion. *State v. Williams*, 418
> So. 2d 562 (La. 1982).  According to *State v. Washington*, 386 So. 2d 1368 (La.
> 1983), considerations for the trial court in determining whether prejudice may result
> from joinder include: whether the jury would be confused by the various counts;
> whether the jury would be able to segregate the various charges and evidence;
> whether the defendant could be confounded in presenting his various defenses;
> whether the crimes charged would be used by the jury to infer a criminal disposition
> and finally, whether, especially considering the nature of the charges, the charging
> of several crimes would make the jury hostile. *State v. Celestine*, 452 So. 2d 676, 680
> (La. 1984); *see also State v. Mims*, 478 So. 2d 685 (La. App. 2d Cir. 1985).

*Harris*, 765 So.2d at 1235; *see also Washington*, 828 So.2d at 97 (upholding the joinder of three

counts of Aggravated Rape involving three different victims where the criminal acts "occurred in

a fairly short period of time and within a two to three mile radius[,] . . . the manner in which each

series of crimes occurred was similar[,] . . .[e]vidence for each crime was presented

chronologically and separately[, and] [t]he record does not reflect that the evidence was confused

in any way and the jury was clearly instructed to consider each count separately").

    In this case, the three counts of Aggravated Rape are of a similar character and are clearly

triable by the same mode of trial.  Therefore, under La. C. Cr. P. arts. 493 and 493.2, these

charges may be joined in the same indictment or information if they are found to be of the "same

or similar character or are based on the same act or transaction, or on two or more acts or

transactions connected together or constituting parts of a common scheme or plan."

    First, the record establishes that two of the aggravated rapes occurred within a two-mile

radius and all occurred within ten miles or less of Petitioner's residence. Second, the record does

not reflect that the DNA evidence was confusing in any way.  Much of the DNA evidence in the

14

record came from the testimony of Mary Jones Dukes, a forensic DNA analyst at the North Louisiana Crime Lab.  Ms. Dukes testimony was precise as to each count of rape and victim, testifying that: (1) the likelihood of the attacker of J.C. being anyone other than the Petitioner was 5.45 trillion to one (R. 681-82); (2) the likelihood of the attacker of A.A. being anyone other than the Petitioner was either a 8.23 trillion or 9.87 quadrillion to one, depending on the sample (R. 708-09) ; and (3) the likelihood that the attacker of R.H. was anyone other than the Petitioner was 1.67 trillion, 3.47 trillion, or 9.87 quadrillion to one, depending on the sample.  (R. 684-86).

Furthermore, the jury was instructed to "separately consider the evidence on each count" and was not under an "obligation to reach the same verdict on each count."  (R. 738).  Most significantly, the offenses were nearly identical.  All of the victims were elderly females, lived within ten miles of the defendant, and were attacked in their bedrooms in the early morning hours by a silent intruder.

Accordingly, Petitioner's claim for relief on this ground claim should be **DENIED**.

### e.    Claim Five: Non-Testimonial Hearsay

Finally, Petitioner contends that the trial court erred by allowing "testimonial hearsay to be admitted in violation of the Sixth and Fourteenth Amendments."  [doc. # 1-2, P. 22].  In support of his argument, Petitioner points to (1) statements made by A.A. and R.H. to medical personnel at Franklin Medical Center and (2) statements made by R.H. to Alice Carson.  *Id.* at 23-26.  The record reveals that at the time of trial, victims R.H. and A.A had passed away and were therefore unavailable to testify.  In support of the prosecution's case, it presented statements made by these victims to friends and medical personnel immediately following the rapes.  *See* (R. 548-77, 619-23)

Evidentiary errors of state law are generally not cognizable in federal *habeas* review, unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding.

15

*Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Indeed, "the erroneous admission of prejudicial testimony does not justify *habeas* relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination."  *Id*.  Thus, in order for Petitioner to obtain relief on his claim that the trial court testimony admitted inadmissible hearsay under Louisiana law, he would have to prove that the trial court's erroneous admission of this testimony was so prejudicial that it denied him the right to a fair proceeding.  Petitioner cannot make this showing because he cannot demonstrate that the admission of Alice Carson's and the medical personnel's testimony was erroneous under state law in the first place.

"Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  La. C.E. art. 801(c).  At issue in this case are two exceptions to the hearsay rule.  Under La. C.E. art. 803, the following are not excluded by the hearsay rule:

> (2) **Excited utterance**. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

> \*                                              \*                                              \*

> (4) **Statements for purposes of medical treatment and medical diagnosis in connection with treatment**. Statements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to treatment or diagnosis in connection with treatment.

La. C.E. art. 803(2), (3).

With regard to the victims' statements to the medical personnel, Petitioner first argues that the victims were "examined by Dr. Woodard" and the "[s]tatements for purposes of medical treatment were made by A.A. to Woodward, not the nurses" who testified.  [doc. # 1-2, P. 28].  However, the record reveals that both Nurse Elrod and Nurse Eldridge were present throughout

the examination of A.A.  *See* (R. 553, 567).  Furthermore, these two witnesses and Dr. Tapia, who examined R.H., only testified as to their own personal observation or medical charts presented to them at trial, not to out-of-court statements made by the victims.  Therefore, this testimony is not hearsay, and even if it were, it would fall squarely within the "statements for purposes of medical treatment" exception to the hearsay rule.  *See* La. C.E. art. 803(4).

Finally, Petitioner specifically points to R.H.'s statements to her friend Alice Carson. [doc. # 1-2, P. 25].  R.H. called Ms. Carson after she had been raped; however, Petitioner argues that R.H.'s statements made during the telephone call and upon Ms. Carson's arrival are inadmissible hearsay.  *Id.*  The record reveals that several hours had passed between the rape and when R.H. called Ms. Carson, due to the fact that victim was unconscious and "was afraid that [her attacker] was still in the house."  (R. 621).  Ms. Carson testified that R.H. made two statements during the telephone conversation: "Alice, come help me, I think I've been raped" and "Alice, come help me, I've been raped." (R. 619).  Immediately thereafter, Ms. Carson left her home and arrived at R.H.'s residence "ten or fifteen minutes" later.  *Id.*  Upon arriving, Ms. Carson asked the victim to describe the attack and Ms. Carson testified that the victim told her that her attacker "put his hand on her leg and then she went kicking and he picked her up, threw her in [*sic*] the floor. . . [.]"  (R. 622).  Additionally, the victim continued to describe the rape, her attacker, and related injuries to Ms. Carson, who in turn testified to this at trial.  Significantly, Ms. Carson testified that K.H. was both "excited and upset."  (R. 619).

At trial, the court admitted Ms. Carson's testimony, finding that K.H.'s out-of-court statements fall under the La. C.E. art. 803(2) excited utterances exception.  (R. 621).  As the record reveals, R.H. was unconscious and, upon regaining consciousness, she believed that her attacker was in her home and laid motionless on her bedroom floor in fear.  Additionally, once

17

R.H. was certain that her attacker had left, she immediately called Ms. Carson who arrived only

"ten to fifteen minutes" later.  There is no specific time limit that restricts the application of the

excited utterance exception.  Based on the record and Ms. Carson's observations, the

undersigned finds that R.H. was clearly "under the stress of excitement caused" by her rape and

attack, and therefore, Ms. Carson's testimony falls under La. C.E. art. 803(2) excited utterances

exception to the hearsay rule.

Of course, testimony that is admissible under a hearsay exception may nevertheless

violate the Confrontation Clause.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  The

Supreme Court in *Crawford* draws a distinction between testimonial and nontestimonial hearsay

and holds that the Confrontation Clause applies only to the former category of statements. *See*

*Davis v. Washington*, 547 U.S. 813 (2006).  Thus, "whether a challenged statement falls within

the class of evidence deemed 'testimonial' will generally be outcome-determinative." *United*

*States v. Holmes*, 406 F.3d 337, 347-48.  Accordingly, in this case, unless the statements made by

the victims to the medical personnel and the statements made by R.H.. to Ms. Carson qualify as

"testimonial," *Crawford* is inapplicable and Petitioner's rights under the Confrontation Clause

are not implicated.

Both the *Crawford* and *Davis* Courts declined to provide a comprehensive definition of

"testimonial" statements. *Crawford*, 541 U.S. at 67; *Davis*, 547 at 2274, fn. 2.  The Court did

note, however, that, at a minimum, the term applies "to prior testimony at a preliminary hearing,

before a grand jury, or at a former trial; and to police interrogations."  *Id* . The Court also

provided three potential formulations of the "core class" of testimonial statements, but declined

to adopt or reject any of them.  The first formulation of testimonial statements consist of *"ex*

*parte* in-court testimony or its functional equivalent - that is, materials such as affidavits,

custodial examinations, prior testimony that the defendant was unable to cross-examine or

similar pretrial statements that declarants would reasonably expect to be used prosecutorially."
*Crawford*, 541 U.S.  at 50 (citation omitted).  The second formulation described testimonial
statements as consisting of "extrajudicial statements … contained in formalized testimonial
materials, such as affidavits, depositions, prior testimony, or confessions."  *Id.* (quoting *White v.
Illinois*, 502 U.S. 346, 365 (1992)).

The third formulation are those "made under circumstances which would lead an
objective witness reasonably to believe that the statement would be available for use at a later
trial."  *Id.* (citation omitted).  In *Crawford*, the Court specifically distinguishes between
"witnesses" who "bear testimony" for Confrontation Clause purposes from those who do not as
follows: "an accuser who makes a formal statement to government officers bears testimony in a
sense that a person who makes a casual remark to an **acquaintance** does not."  *Crawford*, 541
U.S. at 51. (emphasis added)

Within *Crawford*'s third formulation of cases, the Fifth Circuit has held that "purely
private" *ex-parte* conversations between two citizens are nontestimonial when made "under
circumstances which would not lead an objective person 'reasonably to believe that the statement
would be available for use at a later trial.'"  *Guilbeau v. Cain*, No. 05-1399, 2007 U.S. Dist.
LEXIS 66881, at * 29 (5th Cir. July 31, 2007)(citing *Horton v. Allen*, 370 F.3d 75, 84 (1st Cir.
2004) (finding that a co-defendant's statement made during a private conversation with his friend
was not testimonial)*; McKinney v. Bruce*, 125 Fed. Appx. 947, 950 (10th Cir. 2005) (victim's
statements made to his uncle in the uncle's home before his death were not testimonial); *Evans v.
Luebbers*, 371 F.3d 438, 444-45 (8th Cir. 2004) (victim's out-of-court statements to various
witnesses that she was scared of petitioner, that she was verbally and physically abused by
petitioner, that she intended to divorce petitioner and that she had obtained a protective order
against petitioner did "not fit" the *Crawford* definition of testimonial); *Parle v. Runnels*, 387

F.3d 1030, 1037 (9th Cir. 2004) (victim's entries in her diary portraying the violent relationship she had with the defendant were not testimonial because they were not created "under circumstances which would lead an objective witness reasonably to believe that [they] would be available for use at a later trial."); *United States v. McCullough*, 150 Fed. Appx. 507, 2005 WL 2649965, *1-2 (6th Cir. 2005) (defendant's non-testifying companion's incriminating statements made in a bar to another bar patron who testified at trial were not testimonial)).

R.H.'s statements to Ms. Carson, and both victim's statements to the medical personnel were nontestimonial, as they could not "reasonably expect [them] to be used prosecutorially." RH was seeking assistance from her friend who took her to the emergency room immediately after learning what had happened. (R. 623). Moreover, both victims made their statements to the nurses and doctors at Franklin Medical Center for the purpose of seeking medical attention, not to provide information to the police. Therefore, the trial court did not violate Petitioner's rights under the Confrontation Clause of the Sixth Amendment in admitting Ms. Carson's or the healthcare providers' testimony.

Accordingly, Petitioner's claim for relief on this grounds should also be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Wyatt Morgan [docs. # 1] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.**  *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 16th day of October, 2012.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE